DECISION.
{¶ 1} Following a jury trial, defendant-appellant James Smith was found guilty of theft. The trial court imposed a sentence of three years of community control, including 250 hours of community service, the completion of NCTI theft school, and a $1,000 fine. The trial court informed Smith that, upon a violation of his community control, it would impose a sentence of 11 months' imprisonment.
 {¶ 2} Smith now appeals, arguing that his conviction was not supported by the sufficiency or the weight of the evidence, that the trial court erred in denying his motion for a new trial, and that the trial court erred in imposing 250 hours of community service.
 A Scam Goes Awry {¶ 3} At the time of the offense, Smith was employed by Wal-Mart and worked in the receiving department of the Wal-Mart store located on Highland Avenue in Cincinnati. On March 30, 2005, during his shift, Smith purchased a home theater system and three DVD players. He purchased these items from the register in the sporting-goods department. After the purchase, he left the items in that department near the cashier.
 {¶ 4} Smith next obtained identical items, placed them in a cart, and used the receipt from his original purchase to leave the store with these items. Smith then reentered the store, retrieved the items originally purchased, and returned them for a cash refund. Smith's scam was discovered, and after an investigation he was arrested for theft.
 Sufficiency and Weight of the Evidence {¶ 5} In his first assignment of error, Smith argues that his conviction was not supported by the sufficiency or the weight of the evidence. When reviewing a challenge to the sufficiency of the evidence, this court is not permitted to weigh the evidence; instead we must determine "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[1]
 {¶ 6} In contrast, when reviewing a challenge to the weight of the evidence, this court sits as a "thirteenth juror."[2] We review the record, weigh the evidence, consider the credibility of the witnesses, and determine whether the jury lost its way and created a manifest miscarriage of justice.[3]
 {¶ 7} Smith was convicted of theft under R.C. 2913.02(A)(1), which provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."
 {¶ 8} The state presented the testimony of Aida Khalil, the cashier working in the sporting-goods department who rang up Smith's original purchase. Khalil testified that, around 10:25 p.m. on March 30, 2005, Smith purchased one home theater system and three DVD players. Khalil scanned each item separately and deactivated in each item the sensor that would have triggered the store's alarm. Smith told Khalil that he was buying the items for a friend, and he asked to leave the items in her area until his friend arrived to pick them up. Khalil testified that the items were with her until Smith returned around 10:55 p.m. to retrieve them. Upon retrieving the items, Smith asked Khalil to accept their return and to refund his money because his friend's car had broken down and the friend was unable to pick up the items. But Khalil was not allowed to accept the return, and she directed Smith to the store's service desk.
 {¶ 9} Khalil testified that Smith then took his receipt of purchase and the items, in one cart, to the service desk. Khalil also went to the service desk to drop off the money from her register. Khalil explained that each cashier had his or her own identification number that appeared on the receipt of all sales made by that cashier. Khalil's cashier number was 1505.
 {¶ 10} Hamilton County Deputy Sheriff Dale Wittmer testified that he was working an off-duty detail at Wal-Mart on March 30, 2005. Wittmer testified that, at approximately 10:30 or 10:35 p.m., he saw Smith leave the store with fellow employee Dallas Thomas and an unknown black female. The three left the store with a cart containing three DVD players and a surround-sound system.
 {¶ 11} Wittmer testified that a short time later he saw Smith inside Wal-Mart pushing two carts that contained the same items that he had seen Smith take out of the store. Wittmer became suspicious and questioned Smith. Smith told Wittmer that the items were not his and that he did not know to whom they belonged. Smith began to keep an eye on Wittmer and told Wittmer that he had seen several children playing with guns in a particular section of the store. But when Wittmer investigated, he found that all was in order. Wittmer returned to the front of the store and saw Smith return the items at the service desk. Wittmer obtained the return receipt and explained to the store manager his suspicions concerning the events that had occurred.
 {¶ 12} Mary Elliot testified that she was employed as a greeter at Wal-Mart on March 30, 2005. Elliot's responsibilities as a greeter included keeping a log of the specific items that activated the store's alarm sensor. Elliot testified that her log indicated that around 10:33 p.m., on March 30, 2005, the store's sensor was activated. Elliot did not personally recall this specific event, but the log indicated that the sensor was activated by three DVD players and a home theater system purchased from cashier number 1505.
 {¶ 13} Smith presented the testimony of Yvette Hanley, the cashier who had accepted his return at the customer-service desk. Hanley testified that she had provided two refunds for Smith, one for the three DVD players and one for the home theater system. She testified that these items were in separate carts, and that Khalil had accompanied Smith to her desk and stood there while the items were returned.
 {¶ 14} Smith's wife, Sheila, also testified. She stated that Smith had left for vacation the day after this episode. Because Smith needed cash for his trip, he had to return the items that he had purchased once he realized that he was not going to be paid by his friend. Smith's sister, Thim McLeod, verified Sheila Smith's testimony and stated that, on March 31, 2005, Smith traveled to her home in South Carolina.
 {¶ 15} Following our review of the record, we conclude that Smith's conviction was supported by sufficient evidence. When viewed in the light most favorable to the prosecution, the evidence demonstrated that Smith had paid for three DVD players and a home theater system. He then used his original purchase receipt for these items to leave the store with a different set of the same items, and he later returned the items originally purchased for a cash refund. Smith purposely deprived Wal-Mart of its property without Wal-Mart's consent and without paying for the items.
 {¶ 16} We further conclude that Smith's conviction was not against the manifest weight of the evidence. Smith directs our attention to minor discrepancies in the witnesses' testimony. But these discrepancies were relevant to a determination of the credibility of the various witnesses. And we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in weighing the evidence and determining credibility.
 {¶ 17} Accordingly, we overrule Smith's first assignment of error.
 Motion for a New Trial {¶ 18} In his second assignment of error, Smith argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Smith raised this motion after the jury had returned its verdict but before sentence was imposed.
 {¶ 19} Smith's newly discovered evidence came in the form of eyewitness testimony from two persons, Celeste Small and Alex Tucker. In his motion for a new trial, Smith argued that Small would testify that she was the unknown female that Wittmer had seen leaving the store with Smith and Dallas Thomas. According to Small's affidavit, she and Smith had retrieved the items that Smith had purchased for Small's boyfriend from the sporting-goods counter. As they left the store, the sensor was activated. Smith and another man escorted her to her car, but when Smith realized that she did not have enough money to reimburse him for the electronics, he kept the items and took them back into the store.
 {¶ 20} Smith also submitted an affidavit from Alex Tucker. Tucker was employed by Wal-Mart at the time of the incident, and according to his affidavit, on March 30, 2005, he had seen Smith and Dallas Thomas assisting a woman to transport items to her car. He also saw Smith and Thomas return to the store with the same items. He reentered the store with the two men and saw Smith take the items back to the sporting-goods department.
 {¶ 21} The trial court denied Smith's motion for a new trial and alluded to the fact that Smith could have discovered these witnesses prior to trial. We review the trial court's decision for an abuse of discretion.[4] An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court."[5]
 {¶ 22} The Ohio Supreme Court has clearly defined when newly discovered evidence warrants a new trial. To warrant a new trial, the defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to the former evidence, and (6) does not merely impeach or contradict the former evidence."[6]
 {¶ 23} In this case, the trial court did not abuse its discretion in denying Smith's motion. Approximately six months had passed between the theft and Smith's trial. The trial court did not act unreasonably, arbitrarily, or unconscionably in concluding that these new witnesses could have been discovered prior to trial. Alex Tucker had worked with Smith at Wal-Mart. And Celeste Small was the girlfriend of the person for whom Smith had allegedly purchased the electronics. Smith had connections to each of these witnesses.
 {¶ 24} Because the trial court did not abuse its discretion in denying Smith's motion, we overrule his second assignment of error.
 Community Service {¶ 25} In his third assignment of error, Smith argues that the trial court erred in imposing 250 hours of community service as part of his community-control sanctions. Smith relies on this court's decision inState v. Shelton to support his argument.[7]
 {¶ 26} Smith correctly asserts that, in Shelton, we concluded that the trial court could have only imposed upon the defendant in that case a maximum of 200 hours of community service.[8] But the decision inShelton was based on an ambiguity that existed in an earlier version of the Ohio Revised Code.[9] The General Assembly has since corrected the ambiguity noted in Shelton, and it is now clear that a trial court may impose up to 500 hours of community service upon an offender convicted of a felony.
 {¶ 27} R.C. 2929.17 addresses the imposition of community service for felony offenders. R.C. 2929.17(C) provides that a trial court may impose up to 500 hours of community service upon such offenders, pursuant to R.C. 2951.02(B). R.C. 2951.02(B) also provides for the imposition of community service, but it contains the limitation that "[t]he period of the [supervised community-service] work as fixed by the court shall not exceed in the aggregate the number of hours of community service imposed by the court pursuant to section 2929.17 or 2929.27 of the Revised Code."
 {¶ 28} As we have stated, R.C. 2929.17 provides for the imposition of up to 500 hours of community service for felony offenders. And because R.C. 2929.27 solely concerns the imposition of community service for misdemeanor offenders, it does not affect a trial court's authority under R.C. 2929.17.
 {¶ 29} Accordingly, the trial court properly imposed 250 hours of community service. Smith's third assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and SUNDERMANN, J., concur.
[1] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[2] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] Id.
[4] State v. Larkin (1996), 111 Ohio App.3d 516, 523,676 N.E.2d 906.
[5] Pembaur v. Leis (1982), 1 Ohio St.3d 89, 91, 437 N.E.2d 1199.
[6] State v. Petro (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.
[7] State v. Shelton, 165 Ohio App.3d 142, 2006-Ohio-182,844 N.E.2d 1256.
[8] Id. at ¶ 6.
[9] Id. at ¶¶ 4-6.